UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF FRANK TOWNSEND, *et al.*, ) | Case No.: 1:10 CV 2365 | |
| ) | | |
| Plaintiffs ) | | |
| ) | | |
| v. ) | JUDGE SOLOMON OLIVER, JR. | |
| ) | | |
| PROTECTIVE LIFE INSURANCE ) | | |
| COMPANY, ) | | |
| ) | | |
| Defendant ) | ORDER | |

Currently pending in the above-captioned case are: (1) Defendant Protective Life Insurance Company's Motion to Dismiss Class Action Complaint (ECF No. 7); and (2) Plaintiffs' Motion for Leave to File Amended Class Action Complaint (ECF No. 11). For the following reasons, the court denies Defendant's Motion to Dismiss (ECF No. 7), and grants Plaintiffs' Motion to Amend the Complaint (ECF No. 11).

## I. FACTS AND PROCEDURAL HISTORY

The three named Plaintiffs in this case, the Estate of Frank Townsend ("Townsend"), Jacqueline Dunn Smith ("Dunn"), and Judy Marik ("Marik"), filed the instant case in the Court of Common Pleas, Cuyahoga County, Ohio, on September 7, 2010. (Compl. ECF No. 1-1, ¶¶ 1-3.) Defendant removed the case to this court. Defendant filed its Motion to Dismiss Class Action Complaint on November 22, 2010. (Brief in Supp. of Mot. to Dismiss, ECF No. 7-1, at 10-12.) Plaintiffs filed their Memorandum in Opposition to Defendant's Motion to Dismiss Class Action

Complaint on February 11, 2011 (ECF No. 13). Plaintiffs filed a Motion for Leave to File Amended Memorandum in Opposition to Defendant's Motion to Dismiss Class Action Complaint without Exhibits to Correct Typographical Errors (ECF No. 14), and the amended Memorandum in Opposition to Defendant's Motion to Dismiss Class Action Complaint on February 14, 2011 (Br. in Opp. of Mot. to Dismiss, ECF No. 14-1). The amended version of Plaintiffs' Memorandum is substantively the same as the unamended version. The court granted Plaintiffs' Motion to allow Plaintiffs to correct typographical errors. Plaintiffs filed their Motion for Leave to Amend Class Action Complaint on February 11, 2011. (ECF No. 11.) Defendant did not oppose this Motion.

Plaintiffs allege that they each purchased a credit insurance policy from Defendant in conjunction with their respective vehicle purchases. (*Id.* at ¶¶ 10, 16, 22.) The terms of Plaintiffs' policies are contained in the Certificate of Insurance and the Group Policy between Defendant and the individual car dealerships through which Plaintiffs bought Defendant's credit insurance policies. (*Id.*) These policies provide that if the purchaser should die or become disabled during the course of repayment of the car loan, the insurance policy's proceeds would reduce or pay off the debt owed on the loan. (*Id.* ¶ 26.) Plaintiffs paid for policies covering the entire expected life of the loan up-front in a lump sum, or "single premium." (Br. in Supp. of Mot. to Dismiss, at 10-12.) Plaintiffs further allege that they each paid the loan off in full before the life of the loan had expired, and that, under the express terms of the policy and the law, they are accordingly entitled to a return of the premium paid for the time period from the date the loan was terminated through the remaining term that was left on the loan at the time it terminated. (Compl. ¶¶ 13, 19, 25.)

Plaintiffs allege the following claims in their original Complaint: (1) breach of contract; and (2) violation of duty of good faith and fair dealing. In their Amended Complaint, they voluntarily

removed the claim for breach of good faith and fair dealing and their demand for punitive damages. (Pl.'s Mot. to Amend, ECF No. 11, at p. 2.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and recently in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009), clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court, in *Iqbal*, 129 S.Ct. at 1949, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

- 3 -

Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### B. Motion to Amend the Complaint

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should freely give leave for a party to amend its complaint when "justice so requires." The grant or denial of a request to amend a complaint is left to the sound discretion of the trial court. *Gen. Elec. Co. v. Sergeant & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). The trial court, in exercising its discretion, should grant such request in the absence of factors such as "undue delay, bad faith or dilatory motive on the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. LAW AND ANALYSIS

Defendant argues that Plaintiffs' breach of contract claim fails for three reasons:

> First, the express contract between Plaintiffs Marik and Dunn require 60 days notice before the filing of any legal action for refunds. Second, Plaintiffs all failed to comply with the covenant of good faith and fair

> dealing by failing to request a refund before filing the Complaint. <u>Third</u>, Plaintiffs failed to satisfy the implied condition precedent of notice that requires an insured to notify an insurer of a claim prior to instituting litigation.

(Def.'s Br. in Supp. of Mot. to Dismiss, ECF No. 7-1, at p. 16 (emphasis in the original).)

### A. Express Notice Condition Does Not Bar Claims By Plaintiffs Marik and Dunn

Defendant argues that Plaintiffs Marik and Dunn's suits are barred by the following provision contained in the insurance policy certificates issued to these Plaintiffs: "[y]ou cannot start any legal action until sixty (60) days after you send us the proof of your loss and you cannot start any legal action more than three (3) years after the proof is filed." (Marik Cert., ECF No. 7-3, at p. 7; Dunn Cert., ECF No. 7-4, at 7.)

Defendant asserts that the quoted contractual language imposes an express condition precedent that would have required Plaintiffs Marik and Dunn to send Defendant "proof of loss" in the form of a demand for the unearned premium sixty days prior to filing this suit. Defendant contends that "[b]y seeking the refunds of unearned premiums in their breach of contract claim, Plaintiffs have identified those alleged unearned premiums as their loss." (Reply Br. in Supp. of Mot. to Dismiss, ECF 20, at 8.)

Plaintiffs, however, contend that the express language at issue applies to actions arising from claims for death or disability benefits, but is inapplicable to actions seeking to recover unearned premiums. Plaintiffs argue that such an interpretation of the terms is reasonable under the plain language of the certificate. This court agrees. The term "loss" was not defined specifically in the certificate. (Brief in Opp. of Mot. to Dismiss at 28.) As such, the undefined term in the insurance certificate should be given its plain and ordinary meaning. *Heiges v. JP Morgan Chase Bank,* N.A.,

- 5 -

521 F. Supp. 2d 641, 648 (N.D. Ohio 2007) (citation omitted); *Podnar v. Ne Adjusting Services, Inc.*, N.E.2d 878, 881 (9th Dist., 2000). According to Black's Law Dictionary, "loss" is defined in the insurance context as the "amount of financial detriment caused by an insured person's death or an insured property's damage for which the insurer becomes liable." Black's Law Dictionary 956 (7th ed. 1999). Defendant notes that the "Legal Actions" section of the certificate appears under the heading "General Provisions" rather than the separate headings for "Life Insurance" or "Disability Insurance." However, the phrase "proof of loss" appears in the certificate under the latter two headings but is not used in reference to how refunds of unearned premiums will be dealt with under the refund section of the certificate. Precisely the same contractual language and arguments were scrutinized by the court in *Bishop's Prop. & Investments, LLC v. Protective Life Ins. Co.*, 4:05-CV-126CDL, 2006 WL 2557907, at *4 (M.D. Ga. Sept. 1, 2006). The court held that the contract did not require 60 days' notice for refund-related actions. The court opined,

> [t]he certificate uses the phrase "proof of loss" to describe the rules for filing an insurance claim. The certificate does not use the phrase "proof of loss" to explain how a refund of unearned premium will be handled. Rather, the certificate states that Defendant "will make a refund of unearned premium" "[w]hen we [Defendant] are notified, or when we find out, the Insurance has stopped prior to the Expiration Date." Therefore, the Court cannot conclude that a reasonable person in Plaintiffs' position would understand that he must send Defendant a "proof of loss" regarding the unearned premium prior to filing a suit regarding Defendant's failure to refund the unearned premium.

*Id.* The court in that case correctly found the "Legal Actions" notice provision inapplicable to actions for unearned premium refunds because the defendant's proposed construction of "loss" to mean refund was confusing and inconsistent with the meaning of the phrase as it was used elsewhere in the certificate.

- 6 -

In short, Defendant would urge this court to construe the contractual language at issue such that someone would be considered to have "lost" funds if he or she became entitled to a refund of those funds. Not only is such an interpretation precluded by the plain meaning of the language at issue, it is counterintuitive. Defendant's assertion that an express condition precedent of notice applies to unearned premiums is not well-taken.

### B. The Implied Covenant Of Good Faith And Fair Dealing Does Not Establish An Implied Condition Precedent Of Notice By the Insured To Receive A Refund Of Unearned Premiums From The Insurer

Defendant contends that the implied covenant of good faith and fair dealing establishes a condition precedent requiring notice of a claim, and that Plaintiffs' failure to comply with this supposed condition precedent before filing suit is thus also a failure to comply with the implied covenant of good faith and fair dealing. (Br. in Supp. of Mot. to Dismiss, at 18.) Defendant correctly notes that the covenant of good faith and fair dealing is implied in all contracts under Ohio law, including contracts for insurance. *See, e.g.*, *Moskowitz v. Progressive Insurance Co.*, 811 N.E.2d 174, 183 (Ohio Ct. Com. Pl. 2004).

Defendant relies on *Stephan Bus. Enter., Inc. v. Lamar Outdoor Adver. Co.*, No. C-070373, 2008 WL 612267, at *3 (Ohio Ct. App. Mar. 7, 2008). In *Stephan*, a contract required the defendant company to maintain lighting on the plaintiff's billboard, but the plaintiff had failed to notify the defendant that a light was out. The court found that the defendant was consequently not in breach. Defendant argues that the court in *Stephan* held that the implied duty of good faith in the contract required the plaintiff to notify the defendant so that the defendant could fulfill the contractual obligation. (Br. in Supp. of Mot. to Dismiss, at 20.)

However, *Stephan* is distinguishable from the instant case in that the court in *Stephan* found that the contract language clearly and unambiguously established that the billboard lighting was to be done at Stephan's direction and to be maintained "to the needs of the lessor." *Stephan Bus. Enter., Inc.,* 2008 WL 612267, at *2. Thus, it was the clear, unambiguous contractual requirement that the lighting be done and maintained at the plaintiff's direction that led the court to conclude "as a matter of law that Lamar did not breach the unambiguous terms of the lease agreement." *Id*. at 3. Further, the plaintiff's obligation under the implied covenant of good faith and fair dealing to notify the defendant about the light arose because the defendant did not know or have reason to know that the light was not working. *Id.* This is distinguishable from the present case because Plaintiffs in this case have alleged that Defendant possessed information from which it could readily ascertain that Plaintiffs' loans and insurance terminated early. In *Stephan*, the plaintiff's notice requirement arose under the covenant of good faith and fair dealing because the defendant did not know or have reason to know of the alleged breach. (Compl. ¶ 34.) This is contrary to the facts alleged in this case, which for the purposes of deciding Defendant's Motion, the court must accept as true. *Twombly*, 550 U.S. at 570.

Defendant also points to *West Bend Co. v. Chipahua Indus.*, 112 F. Supp. 2d 816, 826-27 (E.D. Wis. 2000), *aff'd*, 11 F. App'x 616 (7th Cir. 2001), in which the court held that notice was a condition precedent to bring suit based on the implied covenant of good faith and fair dealing. In *West Bend*, West Bend sold popcorn makers manufactured by Chipahua, and Chipahua had contracted with West Bend to indemnify West Bend against product liability and other claims. In 1992, West Bend was sued for property damage following a house fire caused by the Chipahua popcorn maker. After doing virtually nothing to defend the suit, West Bend reached a settlement in 1997, and did not notify Chipahua of the litigation and settlement until after the settlement had been reached, nearly four years after the suit had been filed and eight years after the fire. *Id.* at 820.

- 8 -

The court notes there are significant factual differences that render the court's rationale in *West Bend* largely inapplicable to the present case. By unilaterally settling the suit before notifying Chipahua, West Bend deprived Chipahua of its ability to defend the suit and thus its ability to perform under the contract, which subjected Chipahua to significant prejudice. The prejudice that resulted from the lack of notice in *West Bend* is important because, despite the court's findings that good faith and fair dealing established an implied condition precedent of notice, the court noted that "late notice will not relieve an insurer of its duties under the policy unless the insurer has been prejudiced as a result of the delay in receiving notice." *Id.* at 823 (citing *Zenith Insurance Co. v. Employers Insurance of Wausau*, 141 F.3d 300, 307 (7th Cir. 1998)). Thus, West Bend's failure to meet that condition precedent did not, in and of itself, relieve Chipahua of its duty to perform under the contract.

Further, the nature of the duty to defend and indemnify and that of the duty to refund unearned insurance premiums, are so significantly different that prejudice is more likely to result for failure to give notice regarding the former duty rather than the later. In any event, a notable difference between this case and *West Bend* is that West Bend did not allege that Chipahua was in possession of information that would have given it notice of the ongoing litigation before a settlement had been reached. *West Bend*, 112 F. Supp. 2d at 820. In contrast, Plaintiffs in this case have alleged that Defendant was, in fact, in possession of information that could have given Defendant notice that the loans had been repaid. (Compl. ¶ 34.)

Defendant argues that Plaintiffs should not be allowed to benefit from their supposed failure to act in good faith (Br. in Supp. of Mot. to Dismiss, at 21), given that, "a party to a contract who prevents performance thereof by the other party, or renders it impossible, may not avail himself or herself of the wrong, and the other party is excused from performing." 17B C.J.S. Contracts § 528

(2005). Defendant also points to *Rea v. Systronics, Inc.*, 433 S.E.2d 590, 592 (1993) (citation omitted), in which the court noted, "where a party prevents the performance of a stipulation of a contract undertaken by the other party, he is estopped from setting up in [sic] his own behalf any injury which may have resulted from the nonperformance."

However, Plaintiffs in the instant case have neither prevented Defendant from performing under the contract, nor rendered Defendant's issuance of refunds impossible. The language of the insurance certificate clearly states that a refund of unearned premiums will be made "when [Defendant] is notified, **or when [Defendant] finds out**" that the insurance stopped prior to its expiration date. (Dunn Certf., ECF No. 7-4 at 7.) (emphasis added.) Thus, Defendant's argument fails because Plaintiffs have expressly alleged that Defendant could have readily "found out" which of its policyholders had prepaid their loans based on information in Defendant's possession. (Compl. ¶ 34.)

Defendant also repeatedly asserts that a party to a contract is subject to an implied condition precedent where information necessary to the performance of a contract is solely within that party's knowledge, but this assertion is inapplicable to the present case for the same reason noted above: Plaintiffs have alleged that Defendant had the information necessary to perform under the contract from other sources. (Compl. ¶ 34.)

### C. The Insurance Contract Does Not Contain An Implied Condition Precedent Of Notice By the Insured To Receive A Refund Of Unearned Premiums From The Insurer

Defendant next argues that even if a condition precedent of notice is not implied by operation of the covenant of good faith and fair dealing, the court should imply a condition precedent of notice in the insurance contracts at issue based on other principles of contract interpretation. Defendant contends that Plaintiffs failed to comply with this condition precedent by commencing this action without first requesting a refund from Defendant. Defendant cites numerous decisions in which

courts have found implied conditions of notice in insurance contracts. (Br. in Supp. of Mot. to Dismiss, at 19-20.) Indeed, an insured's failure to comply with a notice provision in an insurance contract may preclude payment of benefits by the insurer under the policy. *American Employers Ins. Co. v. Metro Reg'l Transit Auth.*, 12 F.3d 591, 592 (6th Cir. 1993) (citing *Kornhauser v. Natl'l Sur. Co.*, 150 N.E. 921 (Ohio 1926)).

Defendant points to *Richards v. Combined Ins. Co. of America*, 55 F.3d 247 (7th Cir. 1995), in which a credit insurer had allegedly failed to refund unearned insurance premiums to a class of plaintiffs. The court in *Richards* held that although "the insurance certificate did not state or require that the insured file any notification in order to receive a refund of the unearned premiums[,]" the refunds were nevertheless subject to a condition precedent of notice by the insured. *Id.* at 248, 253. In *Hoban v. USLife Credit Ins. Co.*, 163 F.R.D. 509, 516 (N.D. Ill. 1995), the court found that the certificates at issue did not materially differ from the certificates at issue in *Richards*, and that although notice could not be given by the insured as easily as in *Richards*, notice was nevertheless an implied condition precedent in the certificate.

However, the certificates in both *Richards* and *Hoban* that gave rise to an implied condition precedent of notice are different from the certificates at issue in the present case in a crucial respect. The certificate section on unearned premium refunds in *Richards* and *Hoban* states:

> WHEN INSURANCE STOPS— REFUNDS
> This insurance stops when the Term of Insurance in the Schedule expires, or when your loan is paid off, renewed, refinanced or otherwise stops, whichever happens first. If your insurance stops before the Term of Insurance in the Schedule expires, you will promptly be given a refund or credit on your account of unearned premium. This refund or credit will be calculated using the Rule of Anticipation for decreasing life and disability. No refund or credit need be made if the amount to be refunded does not exceed $1.00.

*Richards*, 55 F.3d 247 at 249. In the present case, the section of the certificate under the heading "When Insurance Stops— Refunds" contains the following language notably absent from the quoted language above: ". . .When we [defined as Protective] are notified, **or when we find out**, the insurance has stopped prior to the Expiration Date, we will make a refund of the unearned premium." (Dunn Cert., at 7 (emphasis added.).)

The *Richards* court rightly determined that one should logically infer that notice must be given by the insured because the express language of the certificate did not allude to any other means by which the insurer could come to know that a refund was due. However, in this case, the certificate expressly states two distinct ways by which Defendant's duty to refund arises: the first is when Defendant is notified, and the second is if Defendant "finds out" that a refund is due. Therefore, an argument that notice is a condition precedent to payment of a refund is not available to Defendant at the motion to dismiss stage because Plaintiff was not required to notify Defendant of an occurrence of which it might already be aware. Plaintiffs in the instant case have alleged that Defendant was in possession of information from which it could be readily ascertained which policyholders were owed refunds. (Compl. ¶ 34.) Thus, given the language of Plaintiffs' certificates, an insured was not necessarily required to give the insurer notice that a refund was due, since the language of the certificate makes it clear that if Defendant "finds out" a refund is owed, notice is not required. Plaintiffs point out that courts faced with similar contract language have not found a condition precedent barring suit in those circumstances. *E.g.*, *Hrynak v. Mid-West Nat'l Life Ins. Co. of Tenn.*, Case No. 08-CV-2642, 2009 WL 735851 (N.D. Ohio March 20, 2009) (denying defendant credit insurer's motion to dismiss class action suit for unearned premiums based on insurance certificate language).

Defendant's argument that notice was required is contradicted by language in other portions of the agreement. Elsewhere in the certificate, Defendant uses language such as, "[y]ou have the right to terminate this insurance and receive a full refund or credit against indebtedness for all insurance premiums paid, if you mail or deliver notice of termination to us or the creditor within 15 days of the effective date." (Dunn Cert., at 7.) This language clearly establishes a condition precedent of notice, and similar language is used in other portions of the certificate relating to benefit claims. However, it did not supply similar language in regard to claims for a refund. As Plaintiffs note, when a contract is ambiguous and subject to more than one reasonable interpretation, the ambiguity must be construed against the drafting party. *Buckeye Union Ins. Co. v. Price*, 313 N.E.2d 844 (1974); *Csulik v. Nationwide Mut. Ins. Co.*, 723 N.E.2d 90, 92 (2000). Additionally, in insurance contracts, ambiguous policy terms are to be construed liberally in favor of the insured. *Ohio Gov't Risk Mgmt. Plan v. Harrison*, 874 N.E.2d 115 (2007) (quoting *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, syllabus (1988)). Thus, even if the language used in the certificate could be read to allow the court to consider implying a condition precedent of notice, the court must still resolve the ambiguity in favor of Plaintiffs.

### D. Plaintiffs' Motion For Leave To Amend Complaint

Plaintiffs filed a Motion for Leave to File Amended Class Action Complaint in order to "add Protective Life Insurance Company of Ohio as a defendant, attach the Group Polic[ies] as exhibits, to clarify some of Plaintiffs' previous allegations, and to remove the claim for breach of good faith and fair dealing" (ECF No. 11). Plaintiffs also attached the entire insurance contract to the Amended Complaint and removed their demand for punitive damages. (*Id.*) Defendant did not oppose this Motion.

The court will freely grant leave for a party to amend its complaint when "justice so requires." Fed. R. Civ. P. 15(a)(2). Further, the court's determination that Defendant's Motion to Dismiss should be denied obviates any concern regarding futility. The court perceives no dilatory motive on the part of the movant and grants the motion pursuant to Federal Rule of Civil Procedure 15(a)(2)**.**

## IV. CONCLUSION

For the foregoing reasons, the court denies Defendant Protective Life Insurance Company's Motion to Dismiss Class Action Complaint (ECF No. 7-1), and grants Plaintiffs' Motion for Leave to File Amended Class Action Complaint. (ECF No. 11.)

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

July 14, 2011